The People of the State of New York ex rel. Peter J. Garvey, Respondent, v. The Democratic General Committee of New York County, Sometimes Known as the Democratic-Republican General Committee of New York County, and Others, Appellants.

*Primary Election Law — it neither provides for an executive committee nor the manner of its appointment nor for representation thereon of any assembly district — mandamus requiring the recognition of a person on the executive committee — right of the general county committee to adopt rules at its first meeting without notice thereof — application of the provision for the amendment of rules — failure to file a certified transcript thereof.*

The Primary Election Law (Laws of 1898, chap. 179, as amd. by Laws of 1899, chap. 473) does not require the county or general committee of a political party to appoint an executive committee nor does it require the general county committee, if it elects to have an executive committee, to appoint such committee in any particular way.

The Primary Law does not confer upon any assembly district the right to be represented upon any particular sub-committee of the general committee; this matter is determined by the rules and regulations of the county or general committee.

Section 11 of the Primary Election Law does not authorize the court to issue, upon the application of a member of the general committee of a county, a mandamus requiring the executive committee of the general committee to recognize an unnamed person as a member of the executive committee upon an unsupported allegation in a petition that the persons entitled to choose a member of the executive committee had agreed to recommend an unnamed person as a member thereof, when such undisclosed person has never applied for, or been refused, recognition as a member of the executive committee.

Section 9 of the Primary Law provides : " On the day fixed by the rules, regulations, constitution or by-laws of the party, the members of each general county committee or city committee shall meet and organize. They may proceed to make and adopt rules and regulations, but, unless so adopted, the rules or regulations adopted by the last preceding county or city committee of said party in said county or city shall remain in full force and effect until repealed or amended in accordance with the provisions of this act. * * *

"Subdivision 2. The rules and regulations of the parties and of the conventions and committees thereof * * * shall not be amended except upon reasonable notice.

"Every political committee shall, within three days after its organization, file with the proper custodian of primary records a certificate specifying the names and addresses of its chairman and secretary, and shall within the same period of time after its adoption file with said custodian a transcript of every rule and regulation of said party in said county and of every amendment thereof duly certified in like manner."

The rules governing the Democratic general committee of the county of New York, chosen for the year 1902, provided that an executive committee should be appointed consisting of one member from each assembly district. The general committee chosen for the year 1903 at its first meeting adopted a resolution providing that the executive committee should consist of one member from each uncontested assembly district, and proceeded on the same day to organize the executive committee in accordance with this resolution.

*Held*, that it was competent for the committee to adopt the resolution in question at its first meeting;

That the clause of the Primary Law, providing that the rules of the committee should not be amended except upon reasonable notice, applied only to amendments of rules which had once been adopted or which continued in force because of the failure of the committee to make new ones at its first meeting;

That the validity of the committee's action or of the resolution itself was not affected by the failure to file with the custodian of primary records a transcript of the resolution as required by subdivision 2 of section 9 of the Primary Law.

APPEAL by The Democratic General Committee of New York County, sometimes known as the Democratic-Republican General Committee of New York County, and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of January, 1903, granting the relator's motion for a peremptory writ of mandamus.

*Max D. Steuer*, for the appellants.

*Abram I. Elkus*, for the respondent.

INGRAHAM, J.:

The relator applies for a peremptory writ of mandamus requiring the respondent, the Democratic General Committee of New York County and the respondent Cram, as president or chairman of the said Democratic general committee, and John T. Oakley, as temporary chairman at a meeting of the general committee, to recognize the relator as a member of the Democratic committee, with all

rights, powers and privileges thereto appertaining, and requiring the respondents " to recognize the person duly chosen by your petitioner and his fellow members from the Ninth Assembly District as a member of the Executive Committee of said General Committee ; " and also directing the dissolution of a committee on credentials to which were referred certain protests against the election of the relator and his associates. The petition upon which this application was founded alleges that at a primary election held in the city of New York on the 16th day of September, 1902, the relator was elected a member of the general committee from the ninth assembly district of the county of New York; that on the 30th day of December, 1902, the Democratic general committee of New York county, elected on the 16th day of September, 1902, held its first meeting for the purpose of organization, that day being fixed by the rules and regulations of the committee for the meeting and organization of the general committee; that the roll of the said general committee for the year 1903 was called at said meeting and the relator's name, with others, was called as upon the roll; that the respondent Oakley was elected chairman of the meeting, but that he refused to allow the petitioner to vote upon a resolution to appoint a committee on credentials; that thereafter a motion was made and carried that there should be a roll call of each assembly district represented in the said meeting, and that upon such roll call a representative of each assembly district should name the officers of the delegation from each assembly district committee for the year 1903, and in particular should name the person chosen by such assembly district committee to be its representative upon the executive committee of the said general committee ; that the said executive committee in accordance with the rules and regulations and customs of the said general committee is made up of one member from each assembly district, which member is chosen by the members of each assembly district committee respectively; but that said Oakley omitted, neglected and refused to have the secretary call the name of the ninth assembly district on said roll call for the purpose of designating the officers from that assembly district, including the member of the executive committee; that prior to the meeting the members of the said general committee from the ninth assembly district had chosen one of their number

to be their representative upon the executive committee and had duly appointed and authorized the relator to state the name of the person chosen by the assembly district committee to act as its representative on the said executive committee, but that said Oakley had refused to permit the relator to state the name of the said member of the executive committeee; that the respondents and each of them have refused to recognize the petitioner as one of the members from the ninth assembly district; that a meeting of the executive committee had been called by the respondents or one or more of them to be held on January 5, 1903, and that the respondents refused to permit the person so chosen to exercise any functions as a member of the said executive committee until the report of the committee on credentials.

In answer to this application, the respondents deny that this relator had been denied the right to act as a member of the general committee or at the meeting of the general committee called to organize on the 30th day of December, 1902, but they allege that the relator had been recognized as a member of the general committee, had acted as such and had been accorded all the privileges appertaining to that office, and further denied that they had ever threatened to object or interfere with the rights of the relator in any way as a member of the general committee; that there was a resolution that there should be a roll call of each assembly district represented in the said meeting to name the officers of the delegation from each assembly district for the year 1903, and in particular to name the person chosen by the said assembly district meeting to be its representative upon the said executive committee of the general committee; deny that the presiding officer at the meeting omitted and neglected, or refused to have the secretary call the name of the ninth assembly district on said roll call; denies that the said presiding officer omitted or refused to call or cause or permit to be called the name of the ninth assembly district, or to permit the relator to state the name of the said member of the executive committee; deny that the said executive committee to which it is claimed some unknown person had been elected for the ninth assembly district has the right to appoint the inspectors of election of the said ninth assembly district and allege that the executive committee has neither authority, right nor privilege, either inherently or conferred

upon it, to appoint the inspectors of election, or to choose the place for the holding of the primaries, and allege that the chairman of the general committee is by law the only person authorized to name the inspectors of election and the place for the said primaries ; deny that the respondents refused to permit the unnamed person alleged to have been chosen as a member of the executive committee from the ninth assembly district to exercise any function as a member of the said executive committee until the report of the committee on credentials ; and allege that the executive committee has not performed any functions by reason of the fact that the relator obtained in this proceeding an injunction restraining the executive committee from acting. It was further alleged in answer to the application that at the meeting of the general committee on the evening of December 30, 1902, a resolution was unanimously adopted which provided that " the districts be called in their order, and that one person from each uncontested district and the annexed district, with the exception of the 34th District, in which district there shall be one person from that portion of the district lying south of the Harlem River, and one person from that portion of the district lying north of the Harlem River, named to constitute the Executive Committee for the year 1903 ; " that this executive committee is made up each year as directed by the general committee at the time of its organization, and that there are no duties performed by the executive committee, and no rights have been conferred upon and intrusted to the executive committee ; that the said executive committee has no power to do anything binding upon the said general committee of the county of New York ; no authority to adopt any resolution on behalf of the said general committee, and the only function that has ever been exercised by the executive committee of the general committee of the county of New York has been to meet at stated intervals to discuss such matters as may have been brought before the committee by one of its members in order that matters of public moment, or otherwise, might be suggested to the general committee at its next meeting for action ; that the executive committee, in other words, has no greater power, authority or privilege than would be exercised by any other member of the general committee who would get together to discuss some subjects which might be properly brought before the general committee for favor-

178  PEOPLE ex rel. GARVEY v. DEMOCRATIC COM.

First Department, April Term, 1903. [Vol. 82.

able action, and this is the express limit of the authority, privilege and power of the executive committee; and it is expressly denied that the respondents have refused to permit the relator to hand in the name of the individual alleged to have been selected to represent the ninth assembly district upon the executive committee.

After hearing the parties to this proceeding the court granted a peremptory writ of mandamus, as prayed for in the petition, directing the appellants to forthwith recognize the relator and each of his associates as members of the general committee, with all the rights, powers and privileges thereto appertaining, and further directing them and each of them to recognize as a member of the executive committee of the general committee the person chosen by the relator and his associates from the ninth assembly district as a member of the said executive committee of the said general committee.

It seems to me that in the face of these express denials a peremptory writ of mandamus should not have been granted; that the denials of the respondents raised an issue of fact that had to be disposed of before a mandamus could be granted, and that the only way in which such an issue of fact could be disposed of was by a trial under an alternative writ. There is, however, a fundamental objection that is fatal to this proceeding. The relator seeks to enforce an individual right as a member of the general committee of the Democratic party of the county of New York. That right is to participate in the proceedings of that committee and to be recognized as a member thereof. He does not commence this proceeding on behalf of others or to enforce the rights of others to an office to which they were elected. The only right, therefore, that he could enforce in this proceeding was the right to be recognized as a member of the general committee, and that right was not denied him according to his own statement.

This application is made under the Primary Election Law (Laws of 1898, chap. 179, as amd. by Laws of 1899, chap. 473). The provisions relating to general committees are contained in section 9 of the act of 1899 (as amd. by Laws of 1901, chap. 167). It is there provided that " The times when committees elected at primary elections shall take office shall be determined by the rules and regulations of the respective parties, except that such time shall not be later than the first day of January succeeding their election. On

the day fixed by the rules, regulations, constitution or by-laws of the party, the members of each general county committee or city committee shall meet and organize. They may proceed to make and adopt rules and regulations, but, unless so adopted, the rules or regulations adopted by the last preceding county or city committee of said party in said county or city shall remain in full force and effect until repealed or amended in accordance with the provisions of this act. * * * Each county or city committee and the officers thereof shall have all the power and authority and shall perform all the duties in respect to the nominations of officers to serve at general elections, conferred upon the general committee, the county committee, the city committee, the executive committee, or the officers thereof, given to any party in such city or county by section twelve of the Election Law.

" Subdivision 2. The rules and regulations of parties and of the conventions and committees thereof * * * shall not be amended except upon reasonable notice. Every political committee shall, within three days after its organization, file with the proper custodian of primary records a certificate specifying the names and addresses of its chairman and secretary, and shall within the same period of time after its adoption file with said custodian a transcript of every rule and regulation of said party in said county and of every amendment thereof duly certified in like manner." Section 11 of the act of 1899 provides that " any action or neglect of the officers or members of a political convention or committee * * * shall be reviewable by the appropriate remedy of mandamus or certiorari, as the case may require."

There is nothing in this act that justifies the court in requiring the executive committee of a county or city committee on the application of a member of the committee to recognize an unnamed person as a member of an executive committee upon an unsupported allegation in the petition that the persons entitled to choose a member of the executive committee had agreed to recommend an unnamed person as a member of such executive committee. If the individual so selected presents himself to the executive committee with proper credentials and claims to be allowed to act as such a member and such claim is refused, it will then be time for him to apply for relief; but it is not alleged that any one has made such

demand or has been refused the right to which he was entitled. The provision of section 11 of the Primary Election Law of 1899 giving to the Supreme Court or any justice thereof within the judicial district summary jurisdiction upon the complaint of any citizen to review the action or neglect of the officers or members of a political committee does not justify the court in granting a mandamus upon the application of a citizen to recognize an unnamed person as a member of an executive committee, when such unnamed person has never applied for recognition or demanded and been refused the right to act as a member of the committee. But in addition to this I can find no provision which compels this general committee to have an executive committee at all, or that an executive committee of the general committee should be appointed in any particular way. Assuming that the rules of the general committee for 1902 provided for an executive committee, when the committee met for organization on December 30, 1902, a resolution was proposed and unanimously adopted which provided for an executive committee, and prescribed how it should be appointed. There is nothing in the law, as I view it, to prevent the committee taking this action. The organization of such a committee is not one of the objects which are to be regulated by the rules and regulations therein authorized. The statute (§ 9, subd. 1, as amd. by Laws of 1901, chap. 167) expressly gives to the members of the county committee when they meet to organize, power to make and adopt rules and regulations, and it is only when they fail to adopt rules and regulations that the rules and regulations adopted by the last preceding county committee are to remain in full force and effect. The subsequent provision of section 9 as to the amendment of the rules apply to subsequent amendments. Under the rule as adopted at this meeting of the general committee the ninth assembly district was not authorized to select a member of the executive committee. The provision of the statute (§ 9, subd. 2) that requires that the modified rules should be filed with the custodian of primary records does not avoid an amendment in case that provision is not complied with, and the fact that a certified copy of such amended rule was not so filed before this application was made does not affect the position or entitle this relator to a mandamus. I, therefore, think that neither upon the facts nor the law has the relator shown himself

entitled to a mandamus.   Every fact which bears upon a refusal by the respondents to recognize the relator or his associates as a member of the committee is denied, and the person that the relator seeks to have recognized as a member of the executive committee is not shown to have been refused the right to act as a member of the committee, nor that he has the right to be recognized as a member of the committee.

I think, therefore, that the order appealed from should be reversed, with costs and disbursements, and the proceeding dismissed, with costs.

VAN BRUNT, P. J., O'BRIEN, McLAUGHLIN and LAUGHLIN, JJ., concurred.

O'BRIEN, J. (concurring).:

The purpose and intent of the Primary Election Law is to give representation to each assembly district in a general county committee of each political party.   Upon the organization of such committee it is competent for its members to determine just how the work of administration of the affairs of the body shall be divided, and through what committees and in what manner and form the party purposes shall be carried out.   To that end it is competent for such general committee to make and adopt resolutions and rules, and upon failure to do so, then the Primary Election Law of 1899 (§ 9, subd. 1, as amd. by Laws of 1901, chap. 167) provides that the rules and regulations of the preceding county committee shall be controlling.   There is no law or statute to which our attention has been called which gives to any assembly district, by the mere fact of election of members to the general body, the right to be represented upon any particular committee of that body; but, on the contrary, this subject of representation on particular committees is controlled and determined by the rules and regulations of the general county committee. These rules and regulations, as stated, may be adopted by the members of the general committee, but, if not so adopted, are superimposed upon them by virtue of the law which, in such a case, makes the rules and regulations of the preceding body controlling.   The rights of the relator, therefore, are to be determined by considering what rules existed and applied to the general committee of which he was an elected member, and what as to him and his associates

was their legal effect, and in what way under them he and they have, if at all, been injured, and whether such injury can be redressed by a peremptory writ of mandamus.

It is conceded that the relator was duly elected a member of the Democratic general committee, and we may assume that, in accordance with the rights conferred upon the members elected to this general committee from the ninth assembly district (as provided in the rules and regulations that existed and applied to the preceding body), he and his associates from that district were prepared to suggest one (whose name is not given) as their choice for membership on the executive committee, which was one of the committees of the body. What may have been the scope and duties of such executive committee it is unnecessary for us to determine, it being sufficient to say that whatever rights the members of the general committee elected from other districts had, the same rights were shared by the members elected from the ninth assembly district with respect to the selection of one of their number for membership upon the executive committee or upon any of the committees which, under the rules and regulations, were to be made up by each district selecting a member thereof.

We think, too, that the undisputed inference is that a notice of protest was served as against the ninth assembly district, and while we do not regard such protest as in any way impairing the rights of the relator as a member of the general committee, still the resolution which was adopted in effect amended the rules and regulations as they existed in 1902. The rules existing in 1902 provided in article 5 for an "Executive Committee to consist of one member from each Assembly District;" and the resolution passed by the new body provided "that the districts be called in their order, and that one person from each *uncontested* district * * * (be) named to constitute the Executive Committee for the year 1903."

An explanation of this change or amendment is given in the affidavit of Mr. Grady, wherein it is stated that upon meeting for organization on the 30th day of December, 1902, it was found that the members of the general committee were dissatisfied with the old rule, and accordingly the resolution for calling all districts against which no protest was filed was moved and unanimously carried as an amendment to the rules.

If the general committee had the power by this resolution to amend the rules and regulations, and if the resolution was in effect an amendment and was duly passed, then the relator's right to be allowed to name a member of the executive committee is not as matter of law free from doubt. If at that first meeting held on the 30th day of December, 1902, the general committee had failed to make and adopt rules and regulations, then, under section 9, subdivision 1, of the Primary Election Law (Laws of 1899, chap. 473, as amd. by Laws of 1901, chap. 167), " the rules or regulations adopted by the last preceding county * * * committee of said party in said county * * * shall remain in full force and effect until repealed or amended in accordance with the provisions of this act." Whether, therefore, the old rules were expressly adopted or went into force by virtue of the section of the Primary Election Law referred to, it would follow that thereafter no repeal or amendment of any of the rules could be effected except upon giving " reasonable notice," as required by the Primary Election Law (§ 9, subd. 2). This would undoubtedly prevent, at any subsequent meeting, after the rules had once gone into effect, an amendment being passed without such previous notice as would be equivalent to " reasonable " notice. What is reasonable notice is to be determined by the existing circumstances, conditions or facts. Thus, as already pointed out, where during the year and after rules have once been adopted, it is deemed advisable to change or alter them, then, a notice, to be reasonable, should be given some time prior to the meeting at which the amendment is offered, and particularly to those whose interests may be affected by such alteration or amendment.

We think, however, under the provisions of the Primary Election Law, that upon the *first* meeting of the general committee for organization it was competent for that body to then adopt a complete code of rules and regulations, and it would follow if that power exists in such committee it was equally competent to adopt, amend or reject the rules which had governed the preceding general committee. We know that with respect to party conventions, although it has been the almost invariable practice among the first steps taken to adopt the rules of the Assembly as the rules for their government, there is nothing to prevent such conventions on organizing from adopting an entirely different set of rules. The adoption of the

Assembly rules by such conventions is in no sense referred to, however, as constituting a parallel case, because with respect to the rules and regulations relating to a general county committee we have the provisions of the Primary Election Law already mentioned which require that unless new rules are adopted then the rules and regulations of the prior committee are binding.

The very provision of the Primary Election Law cited says, as will be seen on reading it, that on the day fixed, the members of the general county committee shall meet and organize, and continues: " They may proceed to make and adopt rules and regulations, but unless so adopted, the rules or regulations adopted by the last preceding county  *  *  *  committee of said party  *  *  *  shall remain in full force and effect until repealed or amended in accordance with the provisions of this act." *

If the relator is right in his contention that upon that first meeting of the body for organization it was powerless to make and adopt rules and regulations unless some prior notice of the intended amendment should in some way have been given, this is equivalent to asserting that the body was powerless upon meeting for the first time for organization to adopt any rules and regulations, because up to that time it could give no notice to any one. It did not exist prior to that time as a body or committee, and it would, therefore, necessarily be forced *nolens volens* to be controlled by the rules and regulations which during the prior year had been adopted by the preceding county committee. We think it would be an unusual and strained construction to place upon this section of the Primary Election Law (§ 9, subd. 1, as amd. by Laws of 1901, chap. 167) to hold that a committee when it first meets for organization, though there is conferred upon it the express power to make and adopt rules and regulations, is prevented, nevertheless, from performing that very act because of another provision (§ 9, subd. 2) which requires that amendments shall only be made upon reasonable notice, and that " reasonable notice " as here used shall be the equivalent of notice given at some prior meeting.

Assuming that it was the desire of the entire committee to adopt different rules and regulations than those which governed the preceding county committee, upon whom and how and by whose direc-

---

* Laws of 1899, chap. 473, § 9, subd. 1, as amd. by Laws of 1901, chap. 167.— [REP.

PEOPLE ex rel. GARVEY v. DEMOCRATIC COM.    185

App. Div.]        First Department, April Term, 1903.

tion could notice prior to the first meeting be given? Until the body or committee was brought together for organization it is difficult to conceive, in the absence of any statute or law governing the subject (which is not claimed in this case to exist), how or in what manner any one could give notice; and, as we understand it, notice prior to the meeting is what it is contended is "reasonable notice" of the intention to present a new set of rules and regulations or an amendment or repeal of the rules which governed the preceding county committee. In our view, these provisions as to reasonable notice being given, must be held to apply to all attempts made to amend or repeal rules and regulations which have once been adopted, or which continue in force by failure to make new ones at the first meeting, and should not be construed to take away the right conferred by law upon the committee; upon organizing, to adopt new, or old rules and regulations with such amendments, as may then seem advisable to all the members of the general committee present.

As, under the principle applying to peremptory writs of mandamus, we must take as true the allegations of the respondents, (appellants here) we are obliged to conclude as matter of fact that the resolution in question, which was in effect an amendment of article 5 of the old rules, which, upon the subject of selecting members of the executive committee, had governed the preceding general committee, was unanimously adopted at the first meeting called for the purpose of organization. Though it does not appear that there was any formal resolution adopting the rules and regulations which prevailed during the year 1902, it would follow by force of subdivision 1 of section 9 of the Primary Election Law (as amd. by Laws of 1901, chap. 167) which we have already quoted, that such rules and regulations, except so far as modified or amended at that first meeting, became the controlling rules and regulations of the general committee during the year 1903. The resolution which amended the rules in the respect mentioned with reference to the composition of the executive committee, having been within the right of the body to pass, as it here appears it was passed by unanimous consent, and by a committee or body of which the relator was a member, we fail to see why it was not binding and controlling upon him.

It is insisted that the resolution did not become effective because a certified transcript thereof was not, as directed by subdivision 2

of section 9 of the Primary Election Law, filed by the committee "within three days after its organization * * * with the proper custodian of primary records." It is unnecessary for us to determine, however, what may have been the effect of a failure to file such certified transcript after the resolution was unanimously passed and, according to the relator's version of what occurred, acted upon, because, even though it may be held that the failure to file the certified transcript within three days after the organization of the committee thereafter rendered the resolution nugatory, still, if if we are right in our view that the committee at that first meeting had the power to pass upon the resolution or amendment, and at that meeting acted upon it, then clearly what was then done was valid and effective, no matter how much the force and validity of the resolution might subsequently be destroyed by a failure to file the certified transcript.

I concur, therefore, with Mr. Justice Ingraham for reversal.

Ingraham, McLaughlin and Laughlin, JJ., concurred.

Van Brunt, P. J. (concurring):

I concur. I also think the proceedings should be dismissed because of the unconstitutionality of the law involved.

Order reversed, with costs and disbursements, and proceedings dismissed, with costs.